OPINION
Defendant-appellant, Anthony M. Wright, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of attempted murder in violation of R.C. 2923.02 as it relates to R.C. 2903.02, two counts of rape in violation of R.C. 2907.02, felonious assault in violation of R.C. 2903.11, and kidnapping in violation of R.C. 2905.01. Defendant assigns a single error:
 THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT OF CONVICTION AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTION AND THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED WITH RESPECT TO THE RAPE AND KIDNAPPING CHARGES.
Because the judgment of the trial court is supported by sufficient evidence and is not against the manifest weight of the evidence, we affirm.
According to the state's evidence, on Friday, July 10, 1999, Christine Bost ate dinner, drank two glasses of wine, and called a friend, Mary Cherrington. With Robin Steel driving, the three left Circleville en route to Columbus, where Steel met her boyfriend at a hotel on the east side of Columbus. The four went to The Lobby, a bar on Hamilton Road across the street from Eastland. At The Lobby, Bost had additional drinks, danced, and met defendant, who came up to their table and talked with them.
On leaving The Lobby, Bost got into defendant's van with Mary Cherrington, and the three of them stopped at an after-hours bar. Bost argued with Cherrington, who exited the van suddenly when it returned to the hotel. Defendant told Bost he would take her home to Circleville but needed to change vehicles.
When they arrived to exchange vehicles, defendant told Bost she needed to go into the house. She remembers she went to the front door of the house, stepped inside, and used the bathroom. As she exited the bathroom, she asked defendant if he was ready. In an authoritative voice, defendant told her she was not going anywhere and ordered her downstairs.
Although she remembers going downstairs, Bost does not recall defendant taking her clothes off. She, however, testified "I was like stripped naked." (Tr. 112.) Defendant forcefully held her down, assaulted her, and gave her orders. Specifically, after engaging in vaginal intercourse, defendant ordered her to perform fellatio on him, though she does not recall whether she did. Defendant then attempted to turn her over. When she started screaming, he choked her to the point she thought she was dying. She does not remember whether defendant performed anal intercourse on her, as she blacked out periodically during the episode.
When she went to the bathroom, Bost tried to escape. Defendant found her, screamed at her, and kept slamming her head into the door. She became unconscious, and next remembers waking up in a parking lot, undressed, with a blanket around her. She went to a house, explained the situation, and the young girl who answered the door shut it. She then went into the middle of the street where a police officer drove by and assisted her.
She was taken to Grant Trauma Center. Slides collected and examined revealed sperm from the vaginal swab, none from the oral swab, and sperm from the rectal swab. Further analysis revealed that the DNA from the male fraction of the vaginal swab matched defendant's DNA; no DNA testing was done of the rectal swab.
As part of the examination at the hospital, Nurse Carolyn Gale inventoried Bost's injuries and asked Bost what happened. Bost told her that defendant "'[t]hrew her on the floor,' vaginally raped her, attempted anal penetration, attempted oral penetration, took all of her clothing off, repeatedly beat her around the face and neck and wrapped her in a blanket." (Tr. 262.) Bost sustained such a beating that she was classified as a Level I trauma patient and was placed in the intensive care unit for two days. Gale classified it as the worse case she had ever seen in her career.
Defendant testified on his own behalf, explaining that he and Bost engaged in consensual sexual intercourse. According to defendant, Bost then "started going crazy and hitting me and smacked me twice and I hit her." (Tr. 439.) Bost got dressed and defendant "had to put her out of the house because she was going crazy." (Tr. 440.)
Although the prosecution dismissed the aggravated robbery charge prior to trial, the jury considered the remaining six charges and found defendant guilty on all of them. The trial court, however, subsequently granted defendant's Crim.R. 29 motion regarding the rape count involving fellatio. The trial court sentenced defendant on the remaining counts, merging the felonious assault conviction with the attempted murder conviction. Moreover, in a matter tried to the court, the trial court found defendant not guilty of the violent sexual predator specification attached to one of the rape counts.
Defendant appeals, contending his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. Specifically, defendant contends "the evidence does not establish beyond a reasonable doubt that the defendant purposely compelled the complainant to submit to vaginal intercourse by force or threat of force or that he engaged in anal intercourse with the complainant." (Appellant's Brief, p. 6.) Moreover, defendant contends that because the kidnapping offense is related to restraint to engage in sexual activity, and because the record does not clearly establish that restraint was used to engage in sexual activity, the kidnapping conviction is not supported by the evidence.
To the extent defendant challenges his conviction as not supported by sufficient evidence, we construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported.
When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins
(1997), 78 Ohio St.3d 380 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting evidence"). Conley, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230.
By definition, rape involves engaging in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force. R.C. 2907.02(A)(2). "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person or creates the belief that physical force will be used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct. * * *" State v. Schaim (1992), 65 Ohio St.3d 51, paragraph one of the syllabus. In State v. Mason (1998), 82 Ohio St.3d 144, the Supreme Court found sufficient evidence of force in that the deceased victim's jeans and panties were found pulled down below her knees, and she had been both strangled and beaten.
Here, the prosecution presented more evidence than that found sufficient in Mason. Bost testified she thought she would be raped when defendant, in a commanding voice, told her she was not going anywhere and ordered her down the stairs. She remembers "laying on the bed with my arms held down. * * * That's when it went into the sex," which she indicated meant intercourse. (Tr. 165.) As defendant held her down, he was on top of her, hitting her. She did not want to engage in the sexual activity, and defendant did not ask her if she would. Rather, he ordered her. She was afraid because she was in the house alone, she had no idea where she was, and defendant, who was two to three times bigger than she and very strong, was holding her down. She did not feel she had any choice, she did not feel she could move while it was taking place, and she felt she had no option to leave. Indeed, her attempted escape only led to further beating. The state thus demonstrated that defendant (1) forcefully held Bost down, (2) was large enough to force his will on her, and (3) beat and choked her to accomplish his purpose.
Given the definition of force, as well as the Supreme Court's application in Mason, the state presented more than sufficient evidence of force to prove the force element of rape. State v. Birkman (1993),86 Ohio App.3d 784, 788 (finding that defendant's "act of placing his arms such that [the victim] could not move away from him constituted force" sufficient to meet the force element of gross sexual imposition). Moreover, because the evidence reflects that defendant restrained the victim in order to engage in sexual activity, the kidnapping also is supported by sufficient evidence.
In examining the weight of the evidence, we consider the victim's admission that she blacked-out during portions of the ordeal and could not remember exactly when defendant hit her or whether he hit her before engaging in vaginal intercourse with her. The fact that defendant beat her so soundly and frequently that she could not recall precisely when the blows were lodged does not render the verdict against the manifest weight of the evidence. Bost testified that defendant held her forcefully onto the bed, lay on top of her, and hit her in the face. Indeed, she testified he hit her throughout the "whole incident." (Tr. 114.) Thus, her failure to recall precisely when defendant beat her does not require reversal. Moreover, although defendant testified the sexual acts were consensual, the jury was not required to believe defendant's testimony, especially in view of the variety of internally inconsistent explanations defendant offered to the investigating police officer.
As a result, defendant's convictions for rape and kidnapping do not fail for lack of evidence of force or restraint, either under a sufficiency of the evidence or manifest weight of the evidence analysis.
Lastly, defendant contends the evidence was insufficient evidence to prove defendant anally raped Bost. Bost could not remember whether defendant actually performed anal intercourse on her. The state, however, presented evidence that sperm was found not only from the slides taken from the vaginal swab, but on those taken from the rectal swab. While the vaginal swab was tested to ascertain that it matched defendant's DNA, no similar test was performed on the rectal swab. Nonetheless, the nurse who examined Bost at the hospital testified that she noticed "on the buttocks, near the anal area, a series of small bruising." Consistent with her observation, her report indicates "there is a bruise on the inside of the buttocks near the anus." She further testified that the presence of sperm on the anal swab is consistent with anal intercourse. With that evidence, the prosecution presented sufficient evidence, if believed, to support a finding of anal intercourse.
In terms of weighing the evidence, the record undisputedly presents Bost's failure to recall whether anal intercourse occurred. Nonetheless, given her own testimony that defendant turned her over, she screamed, and defendant choked her, coupled with the physical injuries and evidence that sperm was found on the anal swab, the jury's verdict finding defendant performed anal intercourse on Bost is not against the manifest weight of the evidence.
Given the foregoing, defendant's single assignment of error is overruled and the judgment of the trial court is affirmed.
 ______________ BRYANT, P.J.
LAZARUS and DESHLER, JJ., concur.